# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MARIA PERRY,                              :

             Plaintiff,          :

                                  Case No. 3:09CV0335

 vs.                                      :

                                  District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                       :   Magistrate Judge Sharon L. Ovington
    Commissioner of the Social
    Security Administration,             :

             Defendant.          :

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Maria Perry sought financial assistance from the Social Security

Administration by applying for Supplemental Security Income ["SSI"] on June

22, 1999, claiming a disability onset date of October 1, 1995.  (Tr. 16).  She claims

disability from asthma, lung disease, spurs on both feet, anxiety, and depression.

(Tr. 84).  Her application was denied during the initial administrative

proceedings.  She then was provided a hearing before an Administrative Law

Judge ["ALJ"].  In August 2001, the ALJ issued a written decision concluding that

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

1

Plaintiff was not under a "disability" within the meaning of the Social Security

Act and therefore was not eligible for SSI.  Plaintiff did not pursue an

administrative appeal of the initial ALJ's non-disability decision.

In July 2002, Plaintiff filed a second application for SSI.  Plaintiff's second

application was denied by initial determination and she again did not pursue an

appeal.  (Tr. 16).

Plaintiff's current application for SSI was protectively filed on July 10, 2003.

(Tr. 77-79).  After various administrative proceedings, ALJ Thaddeus J.

Armstead, Sr., denied Plaintiff's SSI application based on his conclusion that

Plaintiff's impairments did not constitute a "disability" within the meaning of the

Social Security Act.  (Tr. 35).  The ALJ further noted:

> Acquiescence Rulings 98-3(6) and 98-4(6) have been
> considered in reaching this decision.  There is new and
> material evidence (relating to change in diagnosis of
> mental impairment) that renders the finding contained
> in the prior decision issued on August 30, 2001,
> pertaining to residual functional capacity for light
> work[,] subject to slight revision (see Finding No.7).
> The previous finding that the claimant was unable to do
> some past relevant work is no longer applicable based
> on new and material evidence (i.e., vocational expert
> testimony) (see Finding No. 8).

(Tr. 36).  The ALJ's nondisability determination and the resulting denial of

benefits later became the final decision of the Social Security Administration.

Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #5), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II. BACKGROUND

Plaintiff was 46 years old at the time of the administrative decision, and thus was considered to be a "younger person" for purposes of resolving her SSI claim. *See* 20 C.F.R. § 416.963(c); (*see also* Tr. 77). She has an eleventh grade, "limited" education. *See* 20 C.F.R. § 416.964(b)(3); (*see also* Tr. 88). Plaintiff has worked as a gas station cashier and a restaurant worker in the past. (Tr. 80A-82, 85).

Plaintiff testified at the June 2007 administrative hearing that due to pain in her hip, she could not bend to the floor, or sit or stand for prolonged periods, and had trouble sleeping. (Tr. 1108). Plaintiff also testified that she could not lift with her right arm or raise it above shoulder level, and that a home-health aide had given her a reaching device to help her reach for things on high shelves. (Tr.

3

1111).  Plaintiff was given methadone for back pain at one time, but had not

received specific treatment for back pain complaints since 2001.  (Tr. 1113).

Plaintiff testified that she was told that she would require right knee surgery.

(Tr. 1114).  She testified to earlier knee surgeries in either 1995 or 1996, and again

in either 1997 or 1998.  (Tr. 1114-15).  She was given a knee brace in 2002, but

stopped wearing it in 2004 because it increased her pain.  (Tr. 1116).  She also

experienced chest pain when she was stressed.  (Tr. 1119).  Plaintiff also testified

that she had suffered from depression since 1984, when her daughter died, and

had been receiving mental health treatment since 1991.  (Tr. 1120).

The parties have provided informative and detailed descriptions of the

other evidence and information in the administrative record.  (*See* Doc. #5 at 3-12;

Doc. #9 at 3-11).  In light of this, and upon consideration of the complete

administrative record, while additional detailed discussion of the record would

be unnecessarily duplicative, a general identification of the medical sources upon

whom the parties rely will help frame further review.

Plaintiff relies on the opinions of her treating physician, Dr. See, who

found that Plaintiff could not perform the physical exertional requirements of

even sedentary work.  In December 2003, Dr. See reported that Plaintiff had

chronic back and hip pain, osteosclerosis of her left hand, right hip avascular

necrosis, and right knee chondromalacia. (Tr. 396). According to Dr. See, Plaintiff could walk/stand for one hour and sit for one hour. She was moderately limited in her ability to push/pull, bend, reach, handle, and perform repetitive foot movements. He concluded that Plaintiff was unemployable for 12 months or more. (Tr. 397).

On April 18, 2005, Dr. See reported that Plaintiff's MRIs were consistent with avascular necrosis of her right femoral head. Left knee x-rays from 2004 showed moderate degenerative changes, a hip x-ray from 2002 showed chondral sclerosis and cystic formation, a left hand x-ray showed osteosclerosis, an MRI of her knee showed chondromalacia and a signal abnormality in the lateral femoral condyle, and an MRI of her low back was essentially normal. (Tr. 358-59). Dr. See reported that Plaintiff also had a frozen shoulder in addition to her other physical impairments. Dr. See noted that Plaintiff had problems keeping her appointments with her pain specialist, physical therapist, and him, and that she had an appointment to see a psychiatrist in the past, which she also did not keep. (*Id.*). He noted that in February 2005, Plaintiff's right shoulder had decreased range of motion and muscle strength, but intact sensation. (*Id.*). She also had "some swelling" and "some pain and tenderness" in her right knee. (*Id.*). He opined that Plaintiff's "chronic pain issues right now prevent her from working."

5

(*Id.*). He also noted that she had a "slight degree of mental impairment," as he had seen her at times when she appeared to be severely depressed and tearful. (*Id.*).

As to Plaintiff's alleged mental impairment, she relies on the opinion of the state agency examining psychologist, Dr. McIntosh, who evaluated her in October 2004. Dr. McIntosh diagnosed Plaintiff with major depression (recurrent, moderate) and post-traumatic stress disorder, and assigned her a Global Assessment of Functioning ["GAF"] score of 49. (Tr. 248-50). Dr. McIntosh opined that Plaintiff's abilities to interact with supervisors and coworkers and to deal with work pressure were moderately to severely impaired; and that her abilities to understand, remember, and carry out one or two-step job instructions, and to maintain concentration and attention, were mildly to moderately impaired. (*Id.*).

As to Plaintiff's physical work abilities, the Commissioner relies on the opinions of Dr. Danopulos, who examined Plaintiff in November 2002 and reported that she had full range of motion in her upper and lower extremities. (Tr. 120-37). Further examination revealed that Plaintiff's heels were painful to the touch, but no obvious spurs existed. (Tr. 123). She had pain with motion and palpation of her elbows, right shoulder, and right wrist. (*Id.*). She had pain on

6

palpation of her left thumb.  (*Id*.).  She used a walker and a wheelchair, due to

reported right hip pain.  She had painful, but normal, motion in her right hip,

and both of her knees and ankles had pain-free, normal motion.  (*Id*).  Plaintiff

had no back pain, but right-sided straight leg raising triggered right-sided hip

and buttock pain.  (*Id.*.).  Her lumbar spine motions were restricted on extension

and lateral motion was painful.  There was no evidence of nerve root

compression or peripheral neuropathy.  (*Id*.).  Plaintiff had normal muscle

strength and, other than her low-back extension and lateral flexion, normal range

of motion.  (Tr. 127-29).  Pulmonary function studies were normal.  (Tr. 123, 136-

37).  Dr. Danopulos's impressions were subjective findings of effort-related

shortness of breath, aches and pains all over her body accepted as neuralgias and

arthralgias, history of irritable bowel syndrome, history of early right-sided

carpal tunnel syndrome, early left thumb arthritis, and severe anxiety neurosis

with depressed mood.  (Tr. 124).  He opined that "[h]er ability to do any work

related activities is mainly affected and restricted from her anxiety neurosis and

depressed mood."  (*Id*.).

The Commissioner also relies on the opinion of the medical expert ["ME"]

who testified at the June 2007 administrative hearing.  (Tr. 1124-42).  Dr. Cox,

board-certified in internal medicine, expressed concern that Plaintiff may have

become dependent upon narcotic pain medication that first was prescribed in 2000. (Tr. 1124-25, 1131). Dr. Cox testified that Plaintiff had received no recent significant treatment for pulmonary impairment. (Tr. 1127-28). The only pulmonary function testing was done in 2002, before Plaintiff's alleged onset date of disability. (*Id.*). Dr. Cox testified that no substantial evidence existed of significant cardiac impairment. (Tr. 1128-29). He testified that the record did not document ischemia nor substantiate the need for nitroglycerin. There also was no evidence to substantiate the existence of sickle cell disease. (Tr. 1129).

Dr. Cox further testified that Plaintiff's MRIs from February and July 2006 showed evidence of avascular necrosis, but it was not progressive. (Tr. 1138-39). He testified that a March 2007 x-ray showed that Plaintiff's right hip necrosis was healed and inactive. (Tr. 1129). Dr. Cox also noted that Plaintiff had problems with her shoulder joint, right knee, and very minor changes in her low back. (Tr. 1130). He noted the lack of therapeutic visits in the record. (Tr. 1130-31). Dr. Cox testified that Plaintiff's residual functional capacity finding from the prior August 2001 ALJ decision continued to apply. (Tr. 1125-26, 1142). Finally , he testified that Plaintiff's physical impairments did not meet or equal any listings. (Tr. 1135).

## III.    THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

A.    **Applicable Standards**

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among those, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual."  42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.  An SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The Social Security regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  (*See* Tr. 17-18); *see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B.     The ALJ's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity after July 8, 2003, the protective filing date of her pending application for SSI.  (Tr. 26, 34).

The ALJ found at Step 2 that Plaintiff has the severe impairments of chronic obstructive pulmonary disease, right hip pain secondary to post-surgical residuals, recurrent major depression, and post-traumatic stress disorder.  (*Id.*). The ALJ determined at Step 3 that Plaintiff does not have an impairment or

10

combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 28, 34).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform light work, subject to the following limitations:

> [N]o more than simple repetitive tasks; no climbing of ladders, ropes, or scaffolding; no repetitive crawling; no exposure to concentrated generally obnoxious odors, fumes, gases, smoke, dust, and poor ventilation; occasional and infrequent contact with co-workers and supervisors (more of a solitary work environment); occasional and infrequent contact with the general public as a work requirement; occasional work setting and routine changes; no above-average pressure for production, low pressure for production and pace (for example, using a ten-point scale to measure pressure for production and pace, with "one" representing the least pressure for production and pace and "ten" representing the greatest pressure for production and pace, the claimant would be limited to performing duties at a level of "five" (Acquiescence Ruling 98-4(6)). Giving the claimant the full benefit of doubt with regard to her allegations and subjective complaints, it is found that she requires the following additional nonexertional restrictions: no overhead repetitive reaching above shoulder level - may be done occasionally, but not constantly; no climbing of ladders, ropes, or scaffolding; and simple tasks, with simple instructions if needed.

(Tr. 35).  The ALJ further found that Plaintiff is unable to perform her past relevant work.  (*Id.*).  The ALJ next found that considering Plaintiff's age, education, work experience, and RFC, she can perform jobs that exist in

significant numbers in the national economy. (*Id.*). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for SSI. (*Id.*). Acquiescence Rulings 98-3(6) and 98-4(6) were considered in reaching that decision. (Tr. 36).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.     DISCUSSION

### A.     The Parties' Contentions

Plaintiff directs her arguments mainly to the ALJ's evaluation of certain medical source opinions.  Plaintiff contends that the Commissioner erred by applying Acquiescence Rulings 98-3(6) and 98-4(6).  Plaintiff claims that, with the exception of finding that Plaintiff could not perform her past relevant work under the current application, the ALJ adopted the previous decision with a "slight" modification.  According to Plaintiff, in making such a finding, the ALJ

rejected the opinion of Plaintiff's treating physician, Dr. See, who found that Plaintiff could not perform the physical exertional requirements of even sedentary work, and instead erroneously relied on the findings of Dr. Danopulos, the State agency consultative physician, and the State agency reviewers, as well as the testimony of the ME, Dr. Cox. (Doc. # 5 at 13).

The Commissioner asserts that the ALJ did not misapply *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997), and that the ALJ reasonably found that, when compared to the previous ALJ's decision in August 2001, no new and material evidence documented a significant change in Plaintiff's condition. (Doc. #9 at 12). According to the Commissioner, the RFC for a reduced range of light work established in the prior decision continued to apply. (*Id.*).

**B.    The *Drummond* Decision**

In *Drummond*, the United States Court of Appeals for the Sixth Circuit held that "the principles of res judicata can be applied against the Commissioner." 126 F.3d at 842. "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* (citations omitted). "Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* Under *Drummond*, "[t]he burden is on the

14

Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id.* at 843. To avoid being bound by an earlier decision, the Commissioner must present substantial evidence showing that the claimant's condition has significantly improved. *Id.*

In the present case, ALJ Armstead applied *Drummond* as follows:

> Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), absent new and material evidence documenting a significant change in a claimant's condition, a residual functional capacity and findings pertaining to past relevant work made in a prior hearing decision by an administrative law judge are binding on the present adjudicator provided that the new claim arises under the same title of the Social Security Act. In the prior decision of August 30, 2001, it was found that the claimant was unable to do some of her past relevant work but that she was able to do past relevant work as a housekeeper or press operator as well as a significant number of other jobs in the national economy, and that she was capable of performing a reduced range of light-exertion work. With the exception of the finding that the claimant could do some of her past relevant work, those findings continue to be applicable and are adopted herein with slight modification . . .

(Tr. 16-17).

## C.    Medical Source Opinions

The Social Security regulations and case law require ALJs to apply controlling weight to a treating medical source's opinion when it is both well supported by medically acceptable data and not inconsistent with other

15

substantial evidence of record. *See* 20 C.F.R. § 416.927(d)(2); *see also Rabbers*, 582 F.3d at 660; *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. If a treating medical source's opinion is not entitled to controlling weight, the ALJ must weigh the opinion under "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242.

The Regulation also promise: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (quoting in part 20 C.F.R. § 416.927(d)(2)).

"In appropriate circumstances opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.' One such circumstance may occur, for example, when the 'State medical . . . consultant's opinion is based on review of a complete case record that . . . provides more detailed and comprehensive information that what was available to the individual's treating source.'" *Blakley*, 581 F.3d at 409 (quoting in part Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *3). Yet ALJs must not automatically accept (or reject) the opinions of a non-treating medical

16

source; they instead must evaluate non-treating medical source opinions under the factors of supportability, consistency, and specialization (at a minimum). *See* 20 C.F.R. § 416.927(f); *see also* Ruling 96-6p at *2-*3.

**D.   Analysis**

The ALJ correctly described both the legal standards applicable under the treating physician rule and the additional regulatory factors that apply to treating physicians and other medical sources under 20 C.F.R. § 416.927(d) and (f).  (*See* Tr. 24).  Nevertheless, careful review of the ALJ's decision reveals that substantial evidence does not support his refusal to accord Dr. See's opinions controlling or significant weight.

The ALJ rejected Dr. See's opinion as follows:

> The conclusion of treating physician Dr. See is rejected as being less than credible.  There is clearly no substantial evidence to support the degree of functional limitation described by Dr. See.  The conclusion of Dr. See has been given due consideration but such conclusion cannot be given controlling, or even deferential, weight as it is not supported by substantial evidence.  The only plausible explanation for the rather pessimistic assessment of the claimant's functional capabilities provided by treating physician Dr. See is that such assessment was based on uncritical acceptance of the claimant's subjective complaints and allegations. . . . On its face, the assessment of Dr. See is based not on objective medical evidence but subjective pain complaints.  If the degree of limitation described by Dr. See was, in fact, credible, it would be expected that the

17

>claimant would be receiving much more comprehensive
>care and treatment but such is not the case. For the
>most part, the claimant's condition remains relatively
>stable with only periodic use of prescribed medication.

(Tr. 24).

The ALJ followed by referencing a string of "[c]linical test results" (*see* Tr. 25), giving the impression that overwhelming evidence shows that Plaintiff's condition is not as limiting as assessed by Dr. See. The proposition for which those test results are offered, however, is misleading. Upon examination, the medical test results cited by the ALJ to discredit Dr. See's opinion can be summarized as follows:

>An x-ray of the lumbar spine taken in May 2001, which
>revealed normal alignment with well-maintained
>vertebral body height and disc spaces (Tr. 485);

>An MRI of the lumbar spine taken a week later, which
>showed that the lumbar vertebral bodies maintained
>essentially normal height and alignment; no bony
>destructive abnormality was seen; the conus terminated
>normally at about the L1 level; the Ll-2, L2-3, L3-4 and
>L4-5 levels were essentially unremarkable; no
>significant central or neural foraminal stenosis was seen
>at those levels; there was very little if any central bulge
>at L5-Sl with little thecal sac effacement; the central
>canal and neural foramen remained grossly patent; and
>no other significant abnormality was noted (Tr. 484);

>ER records showing that when Plaintiff was seen there
>in January 2004, her chest pain was diagnosed as "likely
>musculoskeletal or pleuritic" (Tr. 183), and a chest x-ray

18

> taken at the time showing no active pulmonary disease
> or significant interval change (Tr. 206-07);
>
> A nuclear medicine study performed in September 2004
> which showed Plaintiff's left ventricular ejection
> fraction to be within normal limits (Tr. 227-28); and
>
> Additional clinical test results from hospital admissions in
> June and July 2005, showing no evidence of acute
> cardiopulmonary abnormality or evidence of active
> pulmonary disease.  (Tr. 493-524, 526-42).

(*See* Tr. 25).  Significantly, the majority of this evidence is dated before Plaintiff's

alleged date of disability or relates to her cardiac condition.  Because Plaintiff's

primary argument for disability in this case relates to her right hip pain, such test

results are of questionable value for purposes of undermining her present claim.

The ALJ further noted:

> For the reasons previously cited, the conclusion of Dr.
> See that the claimant is "unemployable" is rejected as
> being unsupported by substantial evidence.  Under the
> provisions of Acquiescence Ruling 98-4(6), there is no
> new and material evidence documenting a significant
> change in the claimant's condition.  Therefore, the
> residual functional capacity for a reduced range of light
> work established in the prior decision continues to be
> applicable.

(Tr. 29).

The record demonstrates that Dr. See, a physician at the Miami Valley

Hospital Med-Surg Clinic, has been treating Plaintiff since at least October 2001,

19

and continued to treat Plaintiff through at least June 2005.  (*See generally* Tr. 355-

492).  Dr. See's clinical notes consistently document Plaintiff's avascular necrosis,

lumbosacral pain and tenderness, and heel spurs.  (*Id.*).  Those clinical notes also

show that Plaintiff had decreased strength, reduced range of motion of the

lumbar spine, reduced range of motion of the right hip and right knee, a positive

straight leg raising test, decreased strength in her right hand, and as of April

2004, reduced range of motion of her right shoulder, decreased bilateral leg

strength, decreased reflexes, and swelling of her right knee.  (Tr. 363, 365, 369,

375, 398, 406, 432, 436, 584-585, 588, 590).

In addition to those clinical notes, the record also contains objective

evidence tending to substantiate Dr. See's opinion, including the following: a

May 15, 2002 MRI of Plaintiff's right knee, indicating a possible meniscal tear,

small joint effusion, chondromalacia of the medial facet of the patella and lateral

femoral condyle, and possible early avascular necrosis (Tr. 483); January 25, 2005

right knee x-rays, revealing narrowing of the medical compartment, elevated

patella, and suprapatella effusion (Tr. 581); December 2, 2005 left hip x-rays,

showing mild degenerative changes as well as evidence of core decompression

(Tr. 578); x-rays on the same date of Plaintiff's right shoulder, revealing mild to

moderate degenerative changes at the right acromioclavicular (Tr. 577); a

20

December 21, 2005 MRI of her knee, indicating mild to moderate joint effusion, some joint space narrowing, chondromalacia, and mild medial meniscus signal alteration (Tr. 575); January 23, 2006 knee x-rays, showing moderate osteoarthritis on the right and mild to moderate osteoarthritis on the left (Tr. 603-04); a bilateral hip MRI on February 1, 2006, showing avascular necrosis of both hips, the right greater than left (Tr. 606-07); and July 11, 2006 right shoulder x-rays showing "some degenerative changes in the acromioclavicular joint with joint space narrowing and osteophytes." (Tr. 694). These example of objective medical evidence not only support the opinion of Dr. See, but also seem to document a worsening of Plaintiff's physical condition.

Dr. See's opinion also is consistent with other physician-provided evidence of record. For example, Plaintiff's treating orthopedist, Dr. Anderson, noted in June 2002 that Plaintiff had avascular necrosis of her right hip that had worsened since her cord decompression, as shown on x-rays. (Tr. 432). Dr. Anderson further noted that Plaintiff eventually would need a hip replacement. (*Id*.). Consulting pain specialist Dr. Smith reported in July 2006 that "there is no specific medical or surgical modality that will completely resolve the underlying cause of her pain." (Tr. 690). His suggestion was to "try to improve her overall quality of life and functioning." (*Id*.).

By contrast, the ALJ relied on Dr. Cox's testimony that there had been no significant change or deterioration in Plaintiff's condition since the issuance of the prior decision. (Tr. 23). The ALJ noted that the state agency reviewing physicians, Drs. Norris and Sagone, both opined that Plaintiff would be capable of doing light-exertion work. (*Id.*). The ALJ further relied on Dr. Danopulos, a one-time examining physician, as providing no findings that would be indicative of disability. (Tr. 25). While it is possible that the ALJ thought that this constituted further reason to reject Dr. See's opinion, he provided no explanation or indication of what regulatory factors led him to accept the opinions of Drs. Danopulos, Norris, Sagone and Cox, over the opinions of Dr. See. (*See id.*).

Accordingly, Plaintiff's challenges to the ALJ's evaluation of Dr. See's opinions are well taken.[2]

## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without

---

[2]In light of the above review and the resulting need for remand of this case, in-depth analysis of the parties' contentions as to Plaintiff's alleged mental impairments is unwarranted.

remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).

Remand is appropriate if the Commissioner applied an erroneous principle of

law, failed to consider certain evidence, failed to consider the combined effect of

impairments, or failed to make a credibility finding. *Faucher v. Sec'y of*

*Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the

evidence of disability is not overwhelming, and the evidence of a disability is not

strong while contrary evidence is weak. *See id*. Plaintiff, however, is entitled to

an Order remanding this case to the Social Security Administration pursuant to

Sentence Four of § 405(g), due to the problems identified in Section V, *supra*. On

remand, the ALJ should be directed to: (1) re-evaluate the medical source

opinions of record under the legal criteria set forth in the Commissioner's

Regulations, Rulings, and as required by case law; (2) determine whether Plaintiff

was under a disability after her disability onset date of July 8, 2003; and (3)

determine anew whether Plaintiff was under a disability and thus eligible for SSI.

Accordingly, the case should be remanded to the Commissioner and the

ALJ for further proceedings consistent with this Report and Recommendations.

**IT THEREFORE IS RECOMMENDED THAT:**

1.    The Commissioner's non-disability finding be VACATED;

2.    No finding be made as to whether Plaintiff Maria A. Perry was
      under a "disability" within the meaning of the Social Security Act;

3.    This case be REMANDED to the Commissioner and the
      Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g)
      for further consideration consistent with this Report; and

4.    The case be TERMINATED on the docket of this Court.


August 6, 2010                          ____s/ Sharon L. Ovington____
                                        Sharon L. Ovington
                                        United States Magistrate Judge

24

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).